**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE IT GROUP, et al., | : | Case No. 02-10118 (MFW) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| OFFICIAL COMMITTEE OF UNSECURED | : | |
| CREDITORS OF THE IT GROUP et al., On | : | |
| Behalf of The IT Group, Inc., et al., | : | Adv. Pro. No. 04-51311 (MFW) |
| Plaintiff. | : | |
| v. | : | |
| | : | |
| ACRES OF DIAMONDS, | : | Ref. Adv. Pro. D.I. 156, 157 |
| Defendant. | : | |
| | : | |

**DEFENDANT ACRES OF DIAMONDS, L.P.'S RESPONDING BRIEF
IN OPPOSITION TO THE MOTION OF THE TRUSTEE OF THE IT
LITIGATION TRUST FOR WITHDRAWAL OF REFERENCE
PURSUANT TO 28 U.S.C. § 157(d)**

Dated: May 19, 2006      Douglas N. Candeub (DE Bar No. 4211)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: dcandeub@morrisjames.com

     -and-

Gary Green  (PA Bar No. 15730)
Larry M. Keller (PA Bar No. 28511)
SIDKOFF, PINCUS & GREEN, P.C.
2700 Aramark Tower
1101 Market Street
Philadelphia, PA 19107
Telephone: (215) 574-0600
Facsimile: (215) 574-0310
E-mail: sidkoffpincus3@verizon.com

Counsel to defendant Acres of Diamonds, L.P.

## <u>TABLE OF CONTENTS</u>

<strong><u>Page</u></strong>

COUNTER-PRELIMINARY STATEMENT, AND COUNTER-
STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ...................................1

COUNTER-STATEMENT OF FACTS ................................................................................3

    A.    The Adversary Proceeding..........................................................................3

    B.    The Complaint and Various Amended Complaints .....................................4

    C.    Acres's Motion to Withdraw the Reference, which Plaintiff
           Opposed ......................................................................................................5

    D.    The Scheduling Order with the Original Expert Report Deadlines .............7

    E.    Plaintiff's Four Motions to Extend Deadlines between August
           2005 and February 2006, and Their Repeated Reiteration of
           Deadlines for Summary Judgment Motions to Be Heard in
           Bankruptcy Court.........................................................................................7

    F.    Defendant's Motion *in Limine* and Motion for Summary Judgment...........9

    G.    Plaintiff's Judge-Shopping Motions, and Self-Granted Extension
           of Time........................................................................................................9

SUMMARY OF ARGUMENT ..........................................................................................10

ARGUMENT .....................................................................................................................12

I.     THE LAW OF THE CASE DOCTRINE DICTATES THAT THE
      REFERENCE SHOULD NOT BE WITHDRAWN UNTIL AFTER
      THE DISPOSITIVE MOTIONS HAVE BEEN RULED UPON...........................12

II.    PLAINTIFF'S MOTION IS ILL-TIMED, AND WITHOUT
      JUST CAUSE AT THIS POINT IN THE PROCEEDING ...................................13

    A.    This Action Is a Core Matter .....................................................................14

    B.    This Action Can Be Disposed of on Acres's Summary
           Judgment Motion .......................................................................................14

    C.    Plaintiff's Motion is Not Timely; It is Ill-Timed .......................................15

    D.    Plaintiff Is Engaging in Judge-Shopping ..................................................16

    E.    The Bankruptcy Court Is Still Best Suited to Address
           the Pending Motions ..................................................................................18

CONCLUSION..................................................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arizona v. California*,
    460 U.S. 605 (1983)                                                    12

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800, 816 (1988)                                          12

*Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*,
    107 B.R. 34 (D.Del.1989)                                          13

*In re American Classic Voyages Co.*,
    337 B.R. 509 (D. Del. 2006) (Farnan, J.)              14, 15, 17

*In re Enron Corp.*,
    317 B.R. 629 (Bankr. S.D.N.Y. 2004)                  12, 14

*In re Kridlow*,
    1999 WL 97939 (Bankr. E.D.Pa. Feb. 19, 1999)      16

*In re Pruitt,* 910 F.2d 1160 (3d Cir.1990)                    13

*NDEP Corp. v. Handl-It, Inc.,* 203 B.R. 905 (D. Del. 1996)      13

**Statutes**

28 U.S.C. § 157(b)(1)                                                    14

28 U.S.C. § 157(b)(3)                                                    10

28 U.S.C. § 157(c)(1)                                                    14

28 U.S.C. § 157(d)                                                    13, 15

**Rules**

Del. L.B.R. 5011-1                                                        10

Fed. R. Bankr. P. 5011                                                10

## COUNTER-PRELIMINARY STATEMENT, AND
## COUNTER-STATEMENT OF NATURE AND
## STAGE OF PROCEEDINGS

Plaintiff, the IT Litigation Trust, as successor in interest to the Official Committee of Unsecured Creditors ("Plaintiff" or the "IT Trust") filed a set of motions in the Bankruptcy Court on May 10, 2006, including its Motion of the Trustee of the IT Litigation Trust for Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d) (D.I. 156), and accompanying brief (D.I.157) (hereafter, the "Withdrawal Motion"), that are transparently aimed at judge-shopping.

This is an avoidance action, brought on behalf of the Debtors' estate, solely based on constructive fraudulent transfer, under Section 548(a)(1)(B) of the Bankruptcy Code.

Early in the discovery phase of this proceeding, Defendant Acres of Diamonds, L.P. ("Defendant" or "Acres") moved for withdrawal of the reference, and Plaintiff vigorously opposed that motion, arguing that all pre-trial matters, including possible dispositive motions, could be dealt with by the bankruptcy court judge (at the time, Bankruptcy Judge Paul Lindsey), who would have both knowledge of background of the bankruptcy case generally and substantive familiarity with bankruptcy statute-based avoidance actions  This Court denied Acres's motion to withdraw the reference, in January 2005, on the basis of Plaintiff's arguments. *Mem. Op.*, Civ. No. 04-1360 JJF (Jan. 11, 2005).

Since then, as fact and expert discovery were taking place, the Plaintiff, either on its own or jointly with Defendant, filed four separate motions in the bankruptcy court, between August 2005 and February 2006, seeking extensions of various pre-trial dates, and in each one, Plaintiff's proposed orders have included deadlines for the submission to the bankruptcy court of dispositive motions; responses to dispositive motions; and

1

replies.  In each instance, the bankruptcy court entered amended scheduling orders. The most recent such Scheduling Order set April 28, 2006 as the deadline for filing of dispositive motions.

On April 26, 2006. Acres filed  a Motion *in Limine* to Exclude the Valuation Expert  Report and Related Testimony of Bart A. Brown, Jr.,  with a supporting brief (the "Motion *in Limine*"). (D.I. 146, 147).  On April 28, 2006, the Defendant Acres filed a Motion for Summary Judgment and accompanying brief. (D.I. 151, 152). Defendant's Motion for Summary Judgment incorporates by reference the Motion *in Limine*, and the Motion *in Limine* provides one of the seven grounds upon which summary judgment is sought.

Pursuant to the Local Rules, Plaintiff's response to the Motion *in Limine* was due May 10, 2006; and pursuant to the Scheduling Order, Plaintiff's response to the Summary Judgment Motion was due on May 18, 2006. Plaintiff, however, having seen Defendant's Motion in Limine and Summary Judgment Motion (collectively, "Defendant's Dispositive Motions"), decided *not* to respond to them in accordance with the Local Rules and the Scheduling Order.  Instead, on the date that the response to the Motion *in Limine* was due, Plaintiff filed its Withdrawal Motion, as well as a Motion to Extend Certain Response Deadlines and two other motions.

Having reviewed Defendant's Dispositive Motions, Plaintiff has now decided it would prefer to have them ruled upon by this District Court instead of Chief Bankruptcy Judge Walrath.  Accordingly, Plaintiff has reversed its prior opposition to the withdrawal of the reference, so it can switch judges mid-stream.  As discussed in greater detail

2

below, Plaintiff's ill-timed Withdrawal Motion is an attempt to manipulate the court system, and should be rejected.

Further improper is Plaintiff's discussion, in its Preliminary Statement, of matters discussed between counsel in the nature of compromise negotiations. Plaintiff raises the topic of voluntary mediation, as discussed between counsel, but fails to note that Plaintiff's counsel strategically only raised the subject of mediation a matter of weeks before dispositive motions were due under the Scheduling Order, and without making or having ever made any offer of compromise.

In any event, Defendant strongly believes that this action can be disposed of upon its Dispositive Motions, such that no trial will be necessary. Allowing the Bankruptcy Court to rule upon summary judgment motions was precisely one of the reasons why the earlier withdrawal of reference motion was denied. Having seen Defendant's Dispositive Motions, Plaintiff should not now be allowed to choose which judge it prefers to decide them.

## COUNTER-STATEMENT OF FACTS

### A.    The Adversary Proceeding

This is an avoidance action against defendant Acres pursued by the IT Trust, an entity created pursuant to the First Amended Joint Chapter 11 Plan promulgated by the Debtors and the Official Committee of Unsecured Creditors that the Bankruptcy Court confirmed on April 5, 2004.

Plaintiff seeks avoidance and recovery of a transfer to Acres in the amount of $575,000, made within a year before the filing of the Debtors' bankruptcy petitions. See Complaint, filed on January 14, 2004 (the "Original Complaint") (D.I. 1)

The transfer at issue took place in January, 2001, just under one year before the bankruptcy filing, pursuant to a stock sale transaction whereby debtor Organic Waste Technologies, Inc., which at the time owned 95 percent of the common stock of Keystone Recovery, Inc., purchased the remaining stock in Keystone, which was owned by the defendant, Acres of Diamonds, L.P.

### B.    The Complaint and Various Amended Complaints

Originally, this was a preference action. In both the Original Complaint, filed two days before the expiration of the statute of limitations, and the Amended Complaint, filed on April 27, 2004 (the "Amended Complaint") (D.I. 3), the sole claim asserted was for recovery of one or more transfers to Acres alleged to be avoidable insider preferences, under Section 547 of the Bankruptcy Code. (These complaints were both served on or about May 4, 2004. *See* D.I. 6).

In June 2004, Plaintiff filed a First Amended Complaint, to add a count based on constructive fraudulent transfer pursuant to Bankruptcy Code § 548(a)(1)(B). (D.I. 8) The assertion that Acres was an insider was groundless. After Acres' counsel served on Plaintiff's counsel a Rule 11 motion for sanctions in connection with the insider preference claim, the parties filed a Stipulation pursuant to which Plaintiff was allowed to withdraw the insider preference claim with prejudice and file a second amended complaint. (D.I. 50).

As a result, on April 20, 2005, the Plaintiff filed its Second Amended Complaint, which is based solely on a constructive fraudulent transfer claim under Section

4

548(a)(1)(B) of the Bankruptcy Code. (D.I. 58)[1].

Acres denied the allegations and filed an Answer in which it includes a jury demand, as well as a number of affirmative or additional defenses. (D.I. 62)  Acres did not file a proof of claim in the *IT Group* bankruptcy case.  *See* Joint Motion of the Parties to Further Extend Certain Pretrial Deadlines,  ¶ 9 (D.I. 136).  Consequently, it preserved its right to a jury trial in the case.

### C.    Acres's Motion to Withdraw the Reference, which Plaintiff Opposed

Initially, this action was assigned to Bankruptcy Judge Paul B. Lindsey.

In view of its jury demand, Acres filed a Motion to Withdraw the Reference, in September 2004 (*i.e.*, after the constructive fraudulent transfer count had been added). (D.I. 18).  Per the Local Rules, Acres also filed concomitantly a motion on determination of core or non-core status. (D.I. 17)[2]

Plaintiff filed a 12-page Response strongly opposing the Motion to Withdraw the Reference. (D.I. 21)[3]  Plaintiff also opposed the core/non-core motion. (D.I. 22).  In its Response to the Motion to Withdraw Reference, Plaintiff argued, *inter alia,* the following:

> a.    That Acres had "failed to demonstrate that withdrawal of the reference would serve the interests of judicial economy or that it would be prejudiced by the Bankruptcy Court's management of pre-trial matters." (¶ 26)

---

[1]    At a subsequent Rule 30(b)(6) deposition of the Plaintiff in November 2005, Plaintiff's representative admitted that Plaintiff had no specific factual basis for alleging lack of reasonably equivalent value, at the time of the complaint.

[2]    Defendant Acres had a substitution of its Delaware counsel in August 2005. The motions for withdrawal of reference and for core/non-core determination were submitted by Acres's prior counsel.

[3]    A copy of Plaintiff's Response to Defendant's Motion to Withdraw Reference is attached as Exhibit A.

b.   That the possibility of resolution by dispositive motion favored denial of a withdrawal of the bankruptcy reference (citing two recent cases in which that was a factor) (¶ 25);

c.   That Acres's "unwillingness to consent to [jury] trial before the Bankruptcy Court does not warrant withdrawal of the reference." (¶28);

d.   That denial of the withdrawal request reduces forum shopping. (¶30);

e.   That "withdrawal of the reference would not lead to the most efficient use of judicial resources" because the District Court would not only "be required to expend time familiarizing itself with the law applicable to this proceeding, it would also need to familiarize itself with the factual and procedural background of the [Debtors' Chapter 11 Bankruptcy] Cases." (¶33);

f.   That, by the same token, "the Bankruptcy Court, with its knowledge of these Cases, is the most efficient forum for this adversary proceeding's resolution." (¶33); and

g.   That it is premature to withdraw the reference until "the matter is ready for trial," (¶34), and withdrawal before that time would "result in the unnecessary waste of judicial and estate resources." (¶34).

Resultingly, the Motion to Withdraw Reference was denied by this Court, by a Memorandum Opinion dated January 11, 2005.  (D.I. 34)[4]  Prior to that ruling, the Bankruptcy entered an Order that accepted Plaintiff's position that this adversary proceeding is "core." (D.I. 29).[5]

Plaintiff did not seek an appeal from the opinion denying the motion to withdraw reference.

---

[4]     A copy of this Court's Memorandum Opinion and Order in Civ. No. 04-1360 JJF (Adv. Pro. D.I. 34), denying Defendant's Motion to Withdraw Reference, is attached as Exhibit B.
[5]     A copy of the Bankruptcy Court's Order Determining that Adversary Proceeding is Core, dated October 29, 2004, is attached as Exhibit C.

**D.    The Scheduling Order with the Original Expert Report Deadlines**

This action was re-assigned to Chief Bankruptcy Judge Mary F. Walrath on July 25, 2005. (D.I. 86)

Pursuant to a Scheduling Order that Judge Lindsey had entered, expert reports by the party having the burden of proof on an issue were due by July 11, 2005; and responsive expert reports were due by July 29, 2005. (D.I. 51)

On July 11, 2005, Plaintiff served a single expert report on the issue of the insolvency of The IT Group, Inc., prepared by Bart A. Brown, Jr. and dated March 11, 2005. (D.I. 85) Plaintiff filed no expert report on the subject of "reasonably equivalent value" within the deadline. On July 29, 2005, Acres served a responding expert report on the issue of "reasonably equivalent value." (D.I. 87).

On August 16, 2005, Plaintiff moved for permission to file a second expert report on the issue of "reasonably equivalent value" in connection with the challenged transfer, which it characterized as a "supplement" to its earlier expert report on the Debtors' insolvency. (D.I. 95) On October 18, 2005, the Bankruptcy Court granted Plaintiff's motion authorizing the late filing of its expert's Valuation Report. (D.I. 120)

**E.    Plaintiff's Four Motions to Extend Deadlines between August 2005 and February 2006, and Their Repeated Reiteration of Deadlines for Summary Judgment Motions to Be Heard in Bankruptcy Court**

On August 15, 2005, Plaintiff joined with Acres in filing a Joint Motion to Further Extend Certain Discovery Deadlines and to Adjourn the Trial Date (D.I. 93). In that joint motion, the parties jointly requested that the Bankruptcy Court, *inter alia*, adjourn the trial date pending "additional discovery and the briefing on dispositive motions." (*Id.*, ¶ 19). The motion was granted by a Bankruptcy Court Order dated September 9, 2005, and

7

deadlines for dispositive motions, responses and replies were set forth in the order. (D.I. 104)

On September 30, 2005, Plaintiff filed a Motion to Extend Certain Deadlines (D.I. 110). In it, Plaintiff requested extension of the deadlines for fact discovery and for briefing on dispositive motions in the Bankruptcy Court. Acres filed a separate Motion to Extend Deadlines (D.I. 112). Following a telephonic conference with the Bankruptcy Court, Plaintiff submitted a proposed Amended Scheduling Order under certificate of counsel. (D.I. 123) The Bankruptcy Court entered the Amended Scheduling Order on November 1, 2005, authorizing extensions of fact and expert discovery, and setting forth revised deadlines for the filing of opening briefs, responding briefs, and replies on dispositive motions in the Bankruptcy Court. (D.I. 125)

On January 18, 2006, Plaintiff and Defendant filed a Joint Motion of the Parties to Further Extend Certain Pretrial Deadlines. (D.I. 136), since expert depositions had been noticed, but not yet held. This Joint Motion described the parties' need to complete expert discovery before the submission of summary judgment motions to the Bankruptcy Court. *Id.* ¶ 24. The proposed order again set forth specific dates for the filing of summary judgment motions, responses and replies. On February 6, 2006, the Bankruptcy Court entered the Order Granting Joint Motion of the Parties to Further Extend Certain Pretrial Deadlines (D.I. 138), which set forth dates for filing dispositive motions, responses, and replies in the Bankruptcy Court.

On February 24, 2006, Plaintiff filed a Motion to Extend Expert Discovery Deadline (D.I. 141). As with all the preceding motions, Plaintiff gave no indication of a belief that the Bankruptcy Court should not be resolving summary judgment motions.

The proposed order accompanying the Motion asked that the deadline for filing of dispositive motions be extended to April 28, 2006, and with responses to be filed 20 calendar days later, and replies 10 calendar days after the response. Defendant did not oppose the motion.

On March 9, 2006, the Bankruptcy Court granted Plaintiff's most recent extension motion, and entered the requested scheduling Order, setting forth the new, modified deadlines, including that dispositive motions were made due on April 28, 2006; responses were made due 20 days thereafter; and replies were made due 10 days after the responses.

**F.     Defendant's Motion *in Limine* and Motion for Summary Judgment**

On April 26, 2006, Defendant Acres filed a Motion *in Limine* to Exclude the Valuation Expert  Report and Related Testimony of Bart A. Brown, Jr.,  and supporting Memorandum (the "Motion *in Limine*"). (D.I. 146, 147)  Pursuant to the Local Rules, Plaintiff's response was due May 10, 2006.

On April 28, 2006, the deadline for filing summary judgment motions, Defendant Acres filed a Motion for Summary Judgment and accompanying brief. (D.I. 151, 152).  In the Summary Judgment Motion, Acres incorporates by reference the Motion *in Limine*, and the Motion *in Limine* essentially provides one of the seven separate grounds on which summary judgment should be granted.  Pursuant to the Bankruptcy Court's current Scheduling Order, Plaintiff's Response was due on May 18, 2006.

**G.     Plaintiff's Judge-Shopping Motions, and Self-Granted Extension of Time**

On May 10, 2006, the date on which Plaintiff's response to the Motion *in Limine* was due, Plaintiff did not file a response to that motion.

Instead, Plaintiff filed the following:

a.    Plaintiff's Motion to Extend Response Deadlines to Certain Pending Motions (D.I. 158);

b.    Motion of the Trustee of the IT Litigation Trust for Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d), and supporting brief (D.I. 156, 157);

c.    Motion of the Trustee of the IT Litigation Trust for a Determination that the Adversary Proceeding is Core or Non-Core Pursuant to 28 U.S.C. § 157(b)(3) and Rule 5011-1 of the Local Rules (D.I. 155);  and

d.    Motion of the IT Litigation Trust Trustee to Disqualify Kroll, Inc. as Expert Witness for the Defendant. (D.I. 154).

By its last-minute Motion to Extend Response Deadlines, Plaintiff effectively granted itself an extension of time to respond to Defendant's Summary Judgment Motion and its Motion *in Limine* (collectively, "Defendant's Dispositive Motions").

By its Withdrawal Motion,[6] Plaintiff reverses course, just when, or before, its responses to Defendant's Dispositive Motions have come due, and seeks to have the balance of the pre-trial conduct of this action be handled by this Court instead of Chief Bankruptcy Judge Walrath.

## SUMMARY OF ARGUMENT

1.    In view of the facts that this Court has already ruled upon a motion for withdrawal of the reference in this adversary proceeding, and has ruled that reference should not be withdrawn until after dispositive motions have been ruled upon, and that dispositive motions have just been filed but not responded to, the Law of the Case Doctrine dictates that Plaintiff's motion to withdraw the reference should be denied.  This

---

[6]    Pursuant to Fed. R. Bankr. P. 5011, a motion for withdrawal of reference is heard by the District Court. Pursuant to 28 U.S.C. § 157(b)(3), the bankruptcy judge is required to determine whether a proceeding is core or non-core. *See* Del. L.B.R. 5011-1.

10

Court already decided that dispositive motions should be addressed by the Bankruptcy Court.

       2.      Plaintiff's motion to withdraw the reference not "timely" and is without just cause at this juncture in the proceeding. This Court already denied Defendant's earlier motion to withdraw reference in this proceeding – which the Plaintiff strongly opposed – on the ground that all pre-trial matters can and should be handled by the Bankruptcy Court. The Bankruptcy Court previously ruled, and it is not disputed, that this is a "core" proceeding, meaning that the Bankruptcy Court may enter final judgment, if trial is not required. This action is still in the pre-trial stage, as Acres has just filed dispositive motions (its Motion *in Limine* and its Summary Judgment Motion, which incorporates the Motion *in Limine* by reference for one of its arguments). This action can indeed be disposed of on Acres's dispositive motions. As this Court and the Plaintiff previously recognized, in connection with the earlier motion to withdraw reference, the Bankruptcy Court is and remains best suited to address the dispositive motions and other pretrial matters in this action. Here, Plaintiff has repeatedly sought amended scheduling orders in the Bankruptcy Court all of which provided for specified deadlines for filing dispositive motions, responses and replies, yet Plaintiff waited to express its sudden change of heart until *after* Acres had filed its dispositive motions but just when its response to the first of Acres's two dispositive motions came due. The timing of Plaintiff's motion is transparently suspect, and reflects that Plaintiff is engaging in judge-shopping. This Court should not sanction such a blatant attempt to choose which judge will rule upon Acres's motions or Plaintiff's new motion alleging a conflict of interest in Acres's expert.

**ARGUMENT**

**I.    THE LAW OF THE CASE DOCTRINE DICTATES THAT THE REFERENCE SHOULD NOT BE WITHDRAWN UNTIL AFTER THE DISPOSITIVE MOTIONS HAVE BEEN RULED UPON**

This Court has already ruled on whether or not the automatic reference of this proceeding to the Bankruptcy Court should be withdrawn during the pre-trial stages of the proceeding.  This Court ruled that the reference should not be withdrawn.

As most commonly defined, the law of the case doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988).

This Court already rejected a request in this action for withdrawal of the reference prior to trial, at  a point where dispositive motions may resolve the matter, in its January 11, 2005 Memorandum Opinion in this proceeding.  *See* Exhibit B; *see also In re Enron Corp.*, 317 B.R. 629, 644 (Bankr. S.D.N.Y. 2004) (noting that the court has denied without prejudice motions to withdraw reference "where the cases are still at the preliminary stage, that is, discovery and dispositive motions practice have not yet been undertaken.").

Plaintiff did not appeal from that ruling, and indeed, this Court's rejection of the prior withdrawal of reference motion represented an acceptance of Plaintiff's stated opposition to withdrawal before dispositive motions have been ruled on and the case is ready for trial.

The Defendant has filed Dispositive Motions, which Defendant believes will indeed resolve this action, and as such, this proceeding is by no means yet ready for trial.

Accordingly, consistent with this Court's prior ruling on the identical issue in this proceeding, this Court should reject Plaintiff's Withdrawal Motion, so that Defendant's Dispositive Motions may be addressed by the Bankruptcy Court.

## II.    PLAINTIFF'S MOTION IS ILL-TIMED, AND WITHOUT JUST CAUSE AT THIS POINT IN THE PROCEEDING

Withdrawal of the bankruptcy reference of this adversary proceeding is governed by 28 U.S.C. § 157(d), which provides:

> (d)    The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on *timely* motion of any party, *for cause shown.*

28 U.S.C. § 157(d) (emphasis added).

The statute does not define "cause." The Third Circuit has held that a court should consider: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir.1990). The "factors listed in *Pruitt* were not designed to be exhaustive; they are only minimal standards." *NDEP Corp. v. Handl-It, Inc.,* 203 B.R. 905, 908 (D. Del. 1996). Another consideration is "the nature of the proceedings (*i.e.,* core or non-core)". *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.,* 107 B.R. 34, 39 (D.Del.1989).

Here, there are plentiful reasons why, even if *arguendo* this Court were to re-visit the same issue it already previously, the motion to withdraw should be denied at this time.

13

### A.    This Action Is a Core Matter

It is not disputed, and the Bankruptcy Court has already ruled in October 2004, that this adversary proceeding is "core" within the meaning of 28 U.S.C. § 157. *See* Exhibit C.  The sole cause of action is under Section 548(a)(1)(B) of the Bankruptcy Code, and is therefore based on a right specifically created in the Bankruptcy Code.

Consequently, to the extent this action can be resolved by summary judgment rather than by trial, for which Defendant has demanded a jury, the Bankruptcy Court has the authority to enter a final judgment.  Findings of fact and conclusions of law for submission to the District Court are not required. *See* 28 U.S.C. § 157(b)(1) & (c)(1).[7]

In opposing the withdrawal of reference earlier in this proceeding, Plaintiff argued that whether the claim is core or non-core is the "most important" factor. *See* Exhibit A, p. 7.

### B.    This Action Can Be Disposed of on Acres's Summary Judgment Motion

This Court has recognized that, where an adversary proceeding is at a stage where dispositive motions may resolve the matter, the fact that a jury trial may be required is insufficient to warrant withdrawal of the reference. *See* Exhibit B, p. 3; *In re American Classic Voyages Co.*, 337 B.R. 509, 512 (D. Del. 2006) (Farnan, J.); *see also In re Enron Corp.*, 317 B.R. at 644.

Acres strongly believes this action can indeed be disposed of on its Summary Judgment Motion, including the Motion *in Limine* incorporated into it.

---

[7]    Plaintiff also asserts that Defendant "does not consent to a jury trial before the Bankruptcy Court." Plaintiff's Motion, p. 1.  Defendant is unaware of the specific factual basis for that assertion.  To the contrary, it has been Defendant's understanding that the Delaware bankruptcy courts have simply not been authorized by this District Court to conduct jury trials. The question of whether Defendant would consent to a jury trial in the bankruptcy court has not, to Defendant's knowledge, been presented.

14

In its Motion to Extend Response Deadlines, Plaintiff has misrepresented Acres's Summary Judgment Motion, in characterizing the issues simply as "competing valuations of stock in a relatively small company." (D.I. 158, ¶ 23). For example, Acres's Motion includes three distinct legal grounds for granting summary judgment that are wholly unrelated to valuation issues. All of the issues involve bankruptcy law, which the Bankruptcy Court is best suited to apply. Plaintiff's characterization also implies that Plaintiff has a valuation that is valid and admissible, which is not the case.

Plaintiff has acknowledged that the Motion *in Limine* is "critical," in that if it were granted, Plaintiff would be without an expert on valuation. *Id.* Since the burden of proof is upon Plaintiff on its claim, that is exactly why the Motion *in Limine* is a component of Defendant's Summary Judgment Motion – a dispositive motion which, until after the deadline for filing them had passed, the parties were in full agreement should be decided by the Bankruptcy Court.

### C.    Plaintiff's Motion is Not Timely; It is Ill-Timed

Section 157(d) requires that the withdrawal motion be "timely." 28 U.S.C. § 157(d). One of the factors to be considered in connection with such a motion is its timing. *See* Exhibit B, p. 3; *In re American Classic Voyages*, 337 B.R. at 511.

In this case, the motion could not have been more perversely timed. It was timed, in utter disregard of the Bankruptcy Court's Scheduling Orders and the Local Rules, exactly at a point, *after* Defendant had filed its two Dispositive Motions, the latter of which was filed on the date of the dispositive motions deadline, and only on the date when Plaintiff was required to file a response to the Motion *in Limine*.

That timing plainly reflects an attempt to manipulate judging options (*see below*). *Nothing* in Plaintiff's flurry of motions justified such poor timing. Certainly Plaintiff's

feeble allusion to the recent, confidential discussions about possible voluntary mediation does not justify it. Moreover, Plaintiff's alleged interest in resolving this matter outside of court is belied by the fact that, through the date on which Plaintiff filed its Withdrawal Motion, Plaintiff chose not to make any offer of compromise in this action, despite requests from Defendant.

In any event, if Plaintiff had in mind to file such a motion to withdraw the reference, it certainly could have done so well before it got a chance to review Acres's detailed motion papers. Otherwise, Plaintiff could have abided by its previous argument, that it is premature to withdraw the reference until "the matter is ready for trial." Exhibit A, p. 11. The matter is decidedly *not* ready for trial when dispositive motions have just been filed.

### D.    Plaintiff Is Engaging in Judge-Shopping

The very request by Plaintiff for withdrawal of the reference smacks of pretext. After all, it is almost invariably the party that demanded the jury trial, in this case Acres, that seeks withdrawal of the reference. Plaintiff did not demand a jury trial.[8] Besides, Plaintiff opposed the same motion earlier in the case, arguing in part that the case might be resolved by summary judgment prior to trial.

Though Plaintiff will of course deny it, plainly Plaintiff has decided as a strategic matter that it would rather have the pending motions decided by the District Court rather than by the Chief Bankruptcy Judge. One can only speculate as to the source of that

---

[8]    Indeed, this Plaintiff, as an entity standing in the shoes of the debtor's estate, may not have had any right to a jury trial, had it made demand for one. *See In re Kridlow,* 1999 WL 97939 at *4-*5 (Bankr. E.D.Pa. Feb. 19, 1999).

16

preference.[9] But regardless of Plaintiff's specific thought process, this sudden about-face by Plaintiff can only be explained as judge-shopping.

Judge Lindsey was still the presiding judge over this action when Plaintiff opposed Acres's motion to withdraw the reference, insisting vigorously that all the pre-trial matters of this fraudulent transfer action[10] could and should be dealt with by the more knowledgeable bankruptcy court, and that judicial economy and preservation of estate resources would both be preserved if this action were retained in the Bankruptcy Court until it is ready for trial. Now, however, this adversary proceeding having been re-assigned in the Bankruptcy Court, and Plaintiff having had an opportunity to review and analyze Defendant's Dispositive Motions, Plaintiff does not prefer to have the Bankruptcy Court address Defendant's Dispositive Motions. How else, other than judge-shopping, to explain that Plaintiff's remarkable reversal of position? How else to explain the change of heart after repeatedly seeking scheduling orders pursuant to which dispositive motions would be presented to and decided by the Bankruptcy Court?

As this Court has recognized, a factor in considering motions to withdraw the reference prior to the time of trial is the reduction in forum-shopping. *See* Exhibit B, p. 3; *In re American Classic Voyages*, 337 B.R. at 511. That argument applies far more strongly at this juncture, when Plaintiff, having seen Acres's Motion *in Limine* and its

---

[9]     In a March 2006 letter from Plaintiff's attorney Jeffrey Schlerf to Defendant's counsel, Mr. Schlerf did cite transcribed comments made by District Judge Farnan at a recent hearing in an unrelated non-bankruptcy case, as being favorable to Plaintiff's position on an issue Defendant has raised in the instant case.

[10]     Although the insider preference claim was still in the complaint at the time of Acres's motion to withdraw reference, Plaintiff's counsel had already been put on notice by Defendant's counsel that it was not viable and potentially sanctionable under Rule 11, and Plaintiff dismissed that claim with prejudice a few months later.

17

Summary Judgment Motion, would now like to switch judges mid-stream before responding. This is judge-shopping at its most transparent.

### E.    The Bankruptcy Court Is Still Best Suited to Address the Pending Motions

The cause of action in this proceeding arises under Sections 548 and 550 of the Bankruptcy Code. The Defendant's defenses arise under those provisions, as well as the statute of limitations under Section 546(a) of the Bankruptcy Code, and the limitation upon a debtor's or trustee's avoidance powers under Section 546(e) of the Code. These matters, as well as the general background on the Debtors' case, are matters with which the Bankruptcy Court is intimately familiar.

Similarly, the Bankruptcy Court is best suited to hear the Plaintiff's motion to disqualify the Defendant's expert, which it filed on the same date as the Withdrawal Motion. Plaintiff's motion to disqualify is based on an unsubstantiated charge of the sharing of confidential information between him and certain former consultants to the Debtor. Given the Bankruptcy Court's knowledge of the *IT Group* bankruptcy case, the Bankruptcy Court will also be best suited to address that motion.

Plaintiff previously asserted that "the Bankruptcy Court is best suited to adjudicate this adversary proceeding" (Exhibit A, p. 8), that maintaining this action in the Bankruptcy Court will "foster the economic use of both estate and judicial resources" (*id.*, p. 10), and that the Bankruptcy Court "is the most efficient forum for this adversary proceeding's resolution." *Id.*, p. 11. Plaintiff asserted that the Bankruptcy Court's "intimate knowledge of the factual and legal aspects of these [Bankruptcy] Cases and the related adversary proceedings will prove a substantial advantage to the expeditious

18

resolution of the action[]." *Id.*, p. 11. These arguments made by Plaintiff are no less applicable today than they were when Plaintiff made them.

## CONCLUSION

For the foregoing reasons, Defendant Acres of Diamonds, L.P. respectfully requests that this Court enter an Order, in the form attached hereto as Exhibit D, denying Plaintiff's Withdrawal Motion at this time, and providing for such other and further relief to Defendant as the Court deems just and proper.

Respectfully submitted,

Dated: May 19, 2006              MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Douglas N. Candeub (DE Bar No. 4211)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: dcandeub@morrisjames.com

-and-

Gary Green  (PA Bar No. 15730)
Larry M. Keller (PA Bar No. 28511)
SIDKOFF, PINCUS & GREEN, P.C.
2700 Aramark Tower
1101 Market Street
Philadelphia, PA 19107
Telephone: (215) 574-0600
Facsimile: (215) 574-0310
E-mail: sidkoffpincus3@verizon.com

Counsel to defendant Acres of Diamonds, L.P.

19

# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - x
In re:                                       :
                                             :        Chapter 11
THE IT GROUP, INC.,                          :
        et al.,                              :        Case No. 02-10118 (MFW)
                                             :
            Debtors.                         :        Jointly Administered
                                             :
_____              :
                                             :
OFFICIAL COMMITTEE OF                        :
UNSECURED CREDITORS OF THE IT                :
GROUP, et al., On Behalf of The Estate of    :
The IT Group, Inc., et al.,                  :
                                             :
            Plaintiff,                       :        Adv. Proc. No. 04-51311 (PBL)
                                             :
    v.                                       :
                                             :
ACRES OF DIAMONDS                            :
                                             :
            Defendant.                       :
                                             :
- - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE**

Plaintiff, the IT Litigation Trust (the "Plaintiff"), as successor to The IT Group, Inc. and

its affiliated debtors (collectively, the "Debtors") and the Official Committee of Unsecured

Creditors (the "Committee"), through the IT Litigation Trust Trustee, AlixPartners LLC (the

"Trustee") and its undersigned counsel, files this Memorandum of Law in Opposition to

Defendant's Motion to Withdraw the Reference (the "Motion") filed by Acres of Diamonds (the

"Defendant"), and respectfully represents as follows:

**BACKGROUND**

1.      On January 16, 2002 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy

558358v1

Code"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") thereby commencing their respective chapter 11 cases (the "Cases").

2.      Defendant engaged in a certain business transaction with the Debtors, whereby the Debtors were obligated to pay Defendant the sum of $575,000.00. The Debtors, within ninety days of the Petition Date, transferred $575,000.00 (the "Transfer") to Defendant on account of the antecedent debt. See Complaint to Avoid and Recover Transfers of Property Pursuant to 11 U.S.C. § 547 and 550 of the Bankruptcy Code (as amended, the "Complaint").[1]

3.      The Debtors were insolvent on the dates the Debtors made the Transfer to the Defendant. See 11 U.S.C. § 547(f).

4.      On or about January 10, 2004, Plaintiff filed its Complaint against Defendant, along with over 1,200 other similar complaints against recipients of avoidable transfers.

5.      By order dated April 5, 2004, the Bankruptcy Court confirmed the First Amended Joint Chapter 11 Plan of The IT Group, Inc. and its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Plan").

6.      The effective date of the Plan was April 30, 2004. Pursuant to the Plan, the Trust was vested with the Debtors' remaining assets and causes of action including, without limitation, all avoidance actions arising under chapter 5 of the Bankruptcy Code (such as the preference claim against Defendant set forth in the Complaint).

7.      On or about September 17, 2004, Defendant filed its answer to the Complaint (the "Answer"), in which Defendant demanded a jury trial.

---

[1] Amended complaints were filed on April 27, 2004 and June 10, 2004.

8.    On or about September 22, 2004, Defendant filed its Motion requesting withdrawal of the reference from the Bankruptcy Court to the United States District Court for the District of Delaware (the "District Court").

9.    Concurrently with the Motion, on or about September 22, 2004, the Defendant filed its Motion for A Determination With Respect To Whether Proceeding is Core or Non-Core (the "Core Status Motion").

10.    Concurrently herewith, the Trustee has filed its memorandum of law in opposition to the Core Status Motion.

## **ARGUMENT**

11.    28 U.S.C. § 157(d) provides, in pertinent part:

> [t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

12.    "[S]ection 157(d) envisions two types of withdrawal of a reference to the District Court: (1) mandatory withdrawal, and (2) permissive withdrawal." In re Homeland Stores, Inc., 204 B.R. 427, 430 (D. Del. 1997). Specifically, "[m]andatory withdrawal must occur when (1) consideration of federal law outside of the Bankruptcy Code is necessary to resolve the case or proceeding, and (2) such consideration of federal law outside the Bankruptcy Code is 'substantial and material'." In re CM Holdings, Inc., 221 B.R. 715, 721 (D. Del. 1998) (citation omitted). "Application of this standard furthers the underlying policy of section 157(d), which is to withdraw matters requiring the application of non-bankruptcy law from the relatively less

experienced bankruptcy court to the more experienced district court." In re Smith Corona Corp., 205 B.R. 712, 714 (D. Del. 1996) (citation omitted). Importantly, "[m]andatory withdrawal is a fact specific inquiry, looking to circumstances involved in each case." Adelphia Communications Corp. v. Rigas, 2003 WL 21297258 *3 (S.D.N.Y. June 4, 2003) (citing In re Keen Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995)). "[T]he party seeking withdrawal of the reference bears the burden of demonstrating that substantial and material consideration of nonbankruptcy law is necessary to resolve the case." See In re Continental Airlines, 138 B.R. 442, 445 (D. Del. 1992); see also Homeland Stores, 204 B.R. 427, 430 (same). In this matter, mandatory withdrawal is not applicable because resolution of the Complaint is governed by the Bankruptcy Code and will not require any interpretation of non-bankruptcy federal law.

13.     Further, the District Court has noted that in determining whether or not permissive withdrawal is warranted, "the initial determination should be whether the claim is a core bankruptcy proceeding or whether it is non-core." In re NDEP Corp., 203 B.R. 905, 908 (D. Del. 1996) (citing In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993) cert. dismissed, 511 U.S. 1026 (1994)). "Core" proceedings are those with which the bankruptcy court has greater familiarity and expertise, as distinct from "non-core" proceedings. 28 U.S.C. § 157. In core proceedings, the bankruptcy court has the authority to "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). By contrast, in non-core proceedings, the bankruptcy court is limited to submitting proposed findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(c)(1).

14.     In addition to the core or non-core nature of the proceeding, the Third Circuit requires "in clear terms that cause be shown before the reference can be withdrawn." In re Pruitt, 910 F.2d 1160, 1168 (3d. Cir. 1990) (emphasis added). Courts in the Third Circuit

consider the following factors to determine whether or not "cause" exists to withdraw the

reference:

> the goals of promoting uniformity in bankruptcy administration,
> reducing forum shopping and confusion, fostering the economic
> use of the debtors' and creditors' resources, and expediting the
> bankruptcy process.

In re Pruitt, 910 F.2d at 1168 (quoting Holland American Ins. Co. v. Succession of Roy, 777

F.2d 992, 999 (5th Cir. 1985)).  As set forth herein, the analysis of these factors warrants denial

of the Motion.

## I.    This is a Core Proceeding

15.    The instant action for recovery of a preferential or fraudulent transfer was created

by the Bankruptcy Code, could not exist outside of a bankruptcy case, and, therefore, is a core

proceeding.  28 U.S.C. § 157(b)(2)(F) and (H).

16.    Upon referral by the District Court, section 157(b) of title 28 of the United States

Code ("section 157(b)") provides a bankruptcy court the judicial power to adjudicate "core"

proceedings.  28 U.S.C. § 157(b)(1).  It provides in pertinent part:

> Bankruptcy judges may hear and determine all cases under title 11
> and all core proceedings arising under title 11, or arising in a case
> under title 11, referred under subsection (a) of this section, and
> may enter appropriate orders and judgments, subject to review
> under section 158 of this title.

28 U.S.C. § 157(b)(1).

17.    In a core proceeding, the bankruptcy court has "comprehensive power to hear,

decide and enter final orders and judgments."  Halper v. Halper, 164 F.3d 830, 836 (3d Cir.

1999).  Consequently, the characterization of a proceeding as core is crucial in bankruptcy cases.

Id.

18.     Courts in the Third Circuit determine a proceeding's core status by applying the test enunciated by the Third Circuit in Halper.  Id.  First, the nature of this proceeding fits squarely within the illustrative examples set forth in section 157(b)(2) of title 28 of the United States Code, which provides, in pertinent part:

>       Core proceedings include, but are not limited to –
>
>               (F)     proceedings to determine, avoid, or recover preferences;
>
>               . . . .
>
>               (H)     proceedings to determine, avoid, or recover fraudulent conveyances;

28 U.S.C. § 157(b)(2).

19.     Second, the proceeding must invoke a substantive right provided by the Bankruptcy Code or must be a proceeding "that by its nature, could arise only in the context of a bankruptcy case."  Halper, 164 F.3d at 836.

20.     In Halper, the sole shareholder of a debtor-corporation brought an adversary proceeding seeking to avoid the debtor's granting of a signing bonus, arguing that it constituted a fraudulent transfer under state and federal bankruptcy law.  Id. at 838.  Applying the foregoing reasoning, the court made the two required findings.  First, the court found the proceeding fit the description of a core proceeding under 28 U.S.C. § 157(b)(2)(H).  Second, the court found that because the relief sought "invoked the trustee's power to avoid fraudulent conveyances under § 548, a substantive provision of the bankruptcy code," the claim "arises in a bankruptcy" and the nature of the proceeding was, therefore, "core."  Id.

21.     Similarly applying the Third Circuit's analysis to the instant case leaves no doubt that the instant proceeding is a core proceeding under 28 U.S.C. § 157(b).  First, like the proceeding in Halper, this proceeding seeks to avoid and recover certain fraudulent or

preferential transfers pursuant to sections 547, 548, and 550 of the Bankruptcy Code. These matters are clearly identified as "core" matters under section 157(b); therefore, the first required element of the Third Circuit's analysis is satisfied.

22.     Second, also like the proceeding in Halper, this proceeding invokes the power to avoid fraudulent conveyances under sections 547 and 548. This proceeding, therefore, could arise only in the context of a bankruptcy and is unquestionably a core proceeding. Therefore, the second required element of the Third Circuit's analysis is satisfied as well.

23.     If an adversary proceeding is a core proceeding, such a determination "strongly indicate[s] that there is no cause to withdraw the reference." In re Enron Corp., 295 B.R. 21, 26 (S.D.N.Y. 2003); see also In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996) (observing that whether the claim is core or non-core is the "most important" factor to be considered).

## II.     The Court is Not Compelled to Withdraw the Reference Simply Because the Defendant Has Asserted its Right to a Jury Trial

24.     The Defendant contends that sufficient cause for permissive withdrawal of the reference exists because Defendant (i) has asserted its right to a jury trial, (ii) has refused to consent to such trial before the Bankruptcy Court and (iii) has not filed a proof of claim in these Cases. See Motion, ¶¶ 10-11. The factors articulated by Defendant are insufficient, either standing alone or taken together, to justify withdrawal of the reference here.

25.     It is well-settled that withdrawal of the reference is not compelled by a party's mere assertion of its right to a jury trial pursuant to the Seventh Amendment of the U.S. Constitution. See In re Appoline.com, Inc., 303 B.R. 723, 727-28 (E.D.N.Y. 2004) (denying defendant's motion to withdraw reference—premised solely upon defendant's demand for jury trial—where adversary proceeding was in preliminary stage, bankruptcy court had presided over similar adversary proceedings, had complete understanding of factual background of the case,

and defendant failed to demonstrate that withdrawal would serve interests of judicial economy or that it would be prejudiced by bankruptcy court's management of pre-trial matters); In re Enron Corp., 295 B.R. at 27 (denying motion to withdraw reference of core proceeding, notwithstanding defendant's demand for jury trial and refusal to consent to bankruptcy court presiding over the trial, where adversary proceeding was in preliminary stage, creditors' committee indicated dispositive motions would be filed, and there would likely be numerous other avoidance actions before the bankruptcy court on many of the same factual and legal grounds); In re Enron Power Mktg., Inc., 2003 WL 68036, at *6-7, 11 (S.D.N.Y. 2003) (denying withdrawal of bankruptcy reference despite defendant's demand for jury trial where proceeding was likely to be resolved by dispositive motion, discovery would require judicial oversight, and bankruptcy judge presiding over several similar cases was "familiar with the salient issues in all cases and far more able to supervise all of them together, unless and until a jury trial is necessary.").

26.     Just as it was found in the cases cited above: (i) this adversary proceeding is in the preliminary stages; (ii) the Bankruptcy Court is currently presiding over hundreds of similar adversary proceedings involving preferences and other avoidable transfers in the Cases; (iii) the Bankruptcy Court is best suited to adjudicate this adversary proceeding along with the hundreds of other adversary proceedings seeking similar relief; and (iv) Defendant has failed to demonstrate that withdrawal of the reference would serve the interests of judicial economy or that it would be prejudiced by the Bankruptcy Court's management of pre-trial matters. Accordingly, the Motion should be denied.

27.     As one court observed,

> [a] rule that would require a district court to withdraw a reference
> simply because a party is entitled to a jury trial, regardless of how

> far along toward trial a case may be, runs counter to the policy
> favoring judicial economy that underlies the statutory scheme
> governing the relationship between the district courts and
> bankruptcy courts. Although withdrawal is an important
> component of this scheme, the court must employ it judiciously in
> order to prevent it from becoming just another litigation tactic for
> parties eager to find a way out of bankruptcy.

In re Kenai Corp., 136 B.R. 59, 61 (S.D.N.Y. 1992) (denying motion in the interest of judicial

economy and administration despite defendant's assertion of right to jury trial). Simply put, the

authority cited by Defendant does not require withdrawal of the reference whenever a defendant

asserts its right to a jury trial. Rather, these cases merely recognize that a demand for a jury trial

is only one of several factors to be considered when determining whether withdrawal is

warranted for "cause shown" under 28 U.S.C. § 157(d).

     28.    Importantly, like Defendant's demand for a jury trial, the Defendant's

unwillingness to consent to trial before the Bankruptcy Court also does not warrant withdrawal

of the reference. Enron Corp., 295 B.R. at 27 (holding that "a district court is not compelled to

withdraw a reference simply because a party is entitled to a jury trial" in a case where defendant

refused to consent to a jury trial before the bankruptcy court) (citation omitted).

     29.    Furthermore, Defendant's reliance on In re NDEP Corp. v. Handl-It, Inc., 203

B.R. 905 (D. Del. 1996) in support of its Motion is also misplaced.[2] In withdrawing the

reference, the NDEP court relied specifically on the fact that the adversary proceeding was

related to non-core matters involving the law of contracts, torts and claims for restitution and, as

such, determined that the case was "somewhat removed from the bankruptcy court's realm of

expertise." NDEP, 203 B.R. at 913. The instant adversary proceeding, on the other hand, is a

---

[2]    For this contention the Defendant relies also on an unreported decision withdrawing the reference where,
unlike here, the plaintiff failed to aver any support for continued reference of the proceeding to the bankruptcy court.
Hutchins v. APCC Servs., Inc., 2004 WL 406353 (D.Del., March 3, 2004).

core proceeding, and one that falls squarely within the Bankruptcy Court's realm of expertise. LTV Steel Co. v. City of Buffalo (In re Chateaugay Corp.), 2002 WL 484950 *6 (S.D.N.Y. 2002) (citing LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.), 193 B.R. 669, 675 (S.D.N.Y. 1996)) ("Core matters are those which fall within the bankruptcy court's area of expertise."); Adelphia Communications Corp. v. Rigas, 2003 WL 21297258 *2 (S.D.N.Y. June 4, 2003) (citing Chateaugay Corp., 193 B.R. at 675) ("Core matters are ones with which the bankruptcy court has greater familiarity and expertise[.]"). Therefore, the Court is not compelled to withdraw the reference merely because the Defendant has asserted its alleged right to a jury trial.

**III.    Consideration of All Relevant Factors Dictates Denial of the Motion**

30.    Once a court determines that a matter is a core proceeding, it should next consider whether permissive withdrawal under 28 U.S.C. § 157(d) promotes: (a) uniformity in bankruptcy administration; (b) reduces forum shopping and confusion; (c) fosters the economic use of the debtors' and creditors' resources; and (d) expedites the bankruptcy process. Pruitt, 910 F.2d at 1168.

31.    With the exception of the Defendant's right to a jury trial, which, as discussed herein, is insufficient by itself to warrant withdrawal of the reference, the facts and issues presented here warrant denial of the Motion. See, e.g., Enron Corp., 295 B.R. at 27. There are literally hundreds of similar preference actions currently pending before the Bankruptcy Court in these Cases. Maintaining such actions in the Bankruptcy Court will certainly promote uniformity and administration, reduce confusion, and foster the economic use of both estate and judicial resources. Enron Corp., 295 B.R. at 27; Enron Power, 2003 WL 68036 at *6-7.

32.    Furthermore, many of the preference actions are likely to involve similar factual scenarios and legal issues. The Bankruptcy Court is, therefore, best equipped to uniformly decide these issues, and its intimate knowledge of the factual and legal aspects of these Cases and the related adversary proceedings will prove a substantial advantage to the expeditious resolution of the actions. Id.

33.    Conversely, granting the Motion will not foster the economic and efficient use of the Debtors' limited resources by forcing the Plaintiff to litigate substantially similar matters in at least two forums. Similarly, withdrawal of the reference would not lead to the most efficient use of judicial resources. Not only would the District Court be required to expend time familiarizing itself with the law applicable to this proceeding, it would also need to familiarize itself with the factual and procedural background of the Cases, the filing of which took place nearly two and a half years ago. Indeed, the Bankruptcy Court, with its knowledge of these Cases, is the most efficient forum for this adversary proceeding's resolution. See In re Kenai Corp., 136 B.R. at 61 (denying motion to withdraw the reference in the interests of judicial economy and administration, despite defendant's assertion of right to jury trial); see also Enron Corp., 295 B.R. at 27; Enron Power, 2003 WL 68036, at *6-7. Accordingly, the Motion should be denied.

**IV.    Withdrawal is Premature at This Stage of the Litigation**

34.    Finally, it is premature at this stage of the litigation to withdraw the reference. Plaintiff respectfully submits that at a minimum, the Motion should be denied until such time as discovery is complete and the matter is ready for trial. See, e.g., Enron Power, 2003 WL 68036, at *11 (withdrawal of the reference is inappropriate "unless and until a jury trial is necessary."). Maintaining the status quo is a more sensible result than prematurely withdrawing the reference

as Defendant suggests.  As noted herein, the Bankruptcy Court is familiar with these Cases and

its related adversary proceedings.  Therefore, withdrawal of the reference at this time would

result in the unnecessary waste of judicial and estate resources, well before the matter of a jury

trial is even ripe for consideration here.  Therefore, the Motion should be denied.

## V.    Plaintiffs Do Not Consent to a Jury Trial

35.    In accordance with Fed. R. Civ. P. 38(b), made applicable in bankruptcy

proceedings pursuant to Fed. R. Bankr. P. 9015, and 28 U.S.C. § 157(e), a bankruptcy judge is

authorized to preside over a jury trial only upon receipt of the express consent of all the parties.

36.    The Plaintiff hereby expressly states that it does not consent to a jury trial on any

of the issues set forth in the Complaint.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.


Dated:  October 4, 2004

THE BAYARD FIRM

By: _____
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

-and-

John K. Cunningham
Ileana A. Cruz
WHITE & CASE LLP
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700

Attorneys for Plaintiff

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED

2005 JAN 11 PM 4: 05

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| THE IT GROUP, INC., et al., | : | Bankruptcy Case No. 02-10118 MFW |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| OFFICIAL COMMITTEE OF | : | |
| UNSECURED CREDITORS OF THE | : | |
| IT GROUP, et al., On Behalf | : | |
| of The Estate of The IT | : | |
| Group, Inc., et al., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. No. 04-51311 PBL |
| v. | : | |
| | : | Civil Action No. 04-1360 JJF |
| ACRES OF DIAMONDS, | : | |
| | : | |
| Defendant. | : | |

Eric M. Sutty, Esquire, and Jeffrey M. Schlerf, Esquire, of THE
BAYARD FIRM, Wilmington, Delaware.
Of Counsel: John K. Cunningham, Esquire, and Ileana A. Cruz,
Esquire, of WHITE & CASE LLP, Miami Florida.
Attorneys for Plaintiff.

Christopher D. Loizides, Esquire, of LOIZIDES & ASSOCIATES,
Wilmington, Delaware.
Attorney for Defendant.

**MEMORANDUM OPINION**

January 11, 2005
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendant's Motion To Withdraw The Reference (D.I. 1) and Defendant's Motion For A Determination With Respect To Whether Proceeding Is Core Or Non-Core (D.I. 2). For the reasons discussed, Defendant's Motions will be denied.

## I.    Background

On January 16, 2002, the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. On or about January 10, 2004, Plaintiff commenced an adversary proceeding against Defendant pursuant to Section 547 of the Bankruptcy Code seeking recovery of an allegedly avoidable transfer ("Adversary Proceeding"). On May 28, 2004, Defendant filed its Answer to the Complaint and demanded a jury trial. By its motions, Defendant seeks to withdraw the reference of the Adversary Proceeding.

## II.   Defendant's Motion to Withdraw the Reference (D.I. 1)

A.    Parties' Contentions

By its motion, Defendant contends that litigation of the Adversary Proceeding in the Bankruptcy Court would deprive Defendant of its Seventh Amendment right to a jury trial because (1) it has demanded a jury trial, (2) it has not waived its right to a jury trial by filing a proof of claim, (3) it has not consented to a jury trial before the Bankruptcy Court.

In response, Plaintiff contends that the assertion of a right to a jury trial is not by itself sufficient cause for

withdrawal.  Plaintiff further contends that Defendant's motion
lacks sufficient cause because withdrawal would frustrate the
interests of judicial economy.

B.   Discussion

Pursuant to 28 U.S.C. § 1334(b), district courts "have
original but not exclusive jurisdiction of all civil proceedings
arising under title 11, or arising in or related to cases under
title 11."  Pursuant to 28 U.S.C. § 157(a), each district court
may refer cases under title 11 to the Bankruptcy Court for
disposition.  Under Section 157(d), however, the referred
proceeding can be withdrawn from the bankruptcy court and
returned to the district court.  Section 157(d) provides for both
mandatory withdrawal and discretionary withdrawal.  In this case,
Defendant seeks withdrawal under the standards for discretionary
withdrawal.

In providing for discretionary withdrawal, Section 157(d)
states: "The district court may withdraw, in whole or in part,
any case or proceeding referred under this section, on its own
motion or on timely motion of any party, for cause shown."  The
requirement that cause be shown "creates a 'presumption that
Congress intended to have bankruptcy proceedings adjudicated in
bankruptcy court, unless rebutted by a contravening policy.'"
Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec., 106 B.R.
367, 371 (D. Del. 1989)(citations omitted).

The Third Circuit has set forth five factors that a district court should consider in determining whether "cause" exists for discretionary withdrawal.  These factors include: (1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering economical use of debtor/creditor resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal.  In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990) (adopting Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985)).  "Another factor sometimes considered by courts analyzing whether withdrawal is appropriate is 'whether the parties have requested a jury trial.'"  In re NDEP Corp., 203 B.R. 905, 908 (D. Del. 1996) (quoting  Hatzel, 106 B.R. at 371).

However, assertion of a Seventh Amendment right to a jury trial, coupled with a refusal to consent to such trial before the Bankruptcy Court, is not of itself sufficient cause for discretionary withdrawal.  "[I]t is well-settled that 'a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial.'"  In re Apponline.Com, 303 B.R. 723, 727 (E.D.N.Y. 2004) (quoting In re Enron Corp., 295 B.R. 21, 27 (S.D.N.Y.2003) (internal citations omitted)).  A district court may consider a demand for a jury trial insufficient cause for discretionary withdrawal if the motion is made at an early stage of the proceedings and dispositive motions

3

may resolve the matter.  See In re Apponline.Com, 303 B.R. at

728; In re Enron Power Mktg., Inc., 2003 WL 68036, at *10-11; In

re Enron Corp., 295 B.R. at 27-28.  "Courts have ... recognized

that it serves the interests of judicial economy and efficiency

to keep an action in Bankruptcy Court for the resolution of

pre-trial, managerial matters, even if the action will ultimately

be transferred to a district court for trial.  In re Enron Corp.,

295 B.R. at 28 (citing In re Kenai Corp., 136 B.R. 59, 61

(S.D.N.Y.1992)).

     Recently, the Court was presented with the same issues

presented by the instant motion.  See Official Comm. Of Unsecured

Creditors v. Advanced Masonry, Inc., No. 90-345 (filed November

23, 2004).  The Court will follow its decision in Advanced and

deny Defendant's motion (D.I. 1) for the same rationale.

## II.  Defendant's Motion For A Determination With Respect To Whether Proceeding Is Core Or Non-Core (D.I. 2)

     In its Memorandum Of Law In Support Of Defendant's Motion

For A Determination With Respect To Whether Proceeding Is Core Or

Non-Core (D.I. 2), Defendant states: "Defendant is filing this

motion to fulfill the requirement of LBR 5011-1 that a motion to

determine whether a proceeding is core must be filed with a

motion to withdraw the reference."  (Id. at 1.)  Because the

Court is denying Defendant's motion to withdraw (D.I. 1), the

Court will deny this motion (D.I. 2) as moot.

4

## III. Conclusion

For the reasons discussed, the Court will deny Defendant's Motion To Withdraw The Reference (D.I. 1) and deny Defendant's Motion For A Determination With Respect To Whether Proceeding Is Core Or Non-Core (D.I. 2).

An appropriate Order will be entered.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

2005 JAN 11  PM 4:05

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| THE IT GROUP, INC., et al., | : | Bankruptcy Case No. 02-10118 |
| | : | |
| Debtors. | : | Jointly Administered |

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE IT GROUP, et al., On Behalf of The Estate of The IT Group, Inc., et al., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Adv. No. 04-51311 PBL |
| | : | Civil Action No. 04-1360 JJF |
| ACRES OF DIAMONDS, | : | |
| Defendant. | : | |

## O R D E R

At Wilmington, this 11 day of January 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that

1. Defendant's Motion To Withdraw The Reference (D.I. 1) is **DENIED**; and

2. Defendant's Motion For A Determination With Respect To Whether Proceeding Is Core Or Non-Core (D.I. 2) is **DENIED**.

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THE IT GROUP, INC., et al., | ) | Case No. 02-10118 (MFW) |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |
| Official Committee of Unsecured Creditors | ) | |
| of the IT Group, et al., On behalf of | ) | Adversary Proceeding |
| The Estate of The IT Group, Inc., et al., | ) | 04-51311   (PBL) |
| | ) | |
| Plaintiffs. | ) | |
| v. | ) | |
| | ) | Related Documents: 17, 22, 25 |
| Acres of Diamonds, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DETERMINING THAT ADVERSARY PROCEEDING IS CORE

Upon consideration of the motion by Acres of Diamonds for a Determination as to

Whether this Adversary Proceeding is Core or Non-Core; the Response of the Official

Committee of Unsecured Creditors of the IT Group in Opposition thereto; the Reply of the

Defendant; and it appearing that due and sufficient notice of the motion has been given,

**IT ITS HEREBY ORDERED** that the above-captioned Adversary Proceeding is a "core

proceeding" within the meaning of 28 U.S.C. §157 (b)(1), (b)(2)(F) and (H).

Dated: October 29, 2004                        BY THE COURT:
Wilmington, DE

Paul B. Lindsey
United States Bankruptcy Court Judge

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| THE IT GROUP, et al., | : Case No. 02-10118 (MFW) |
| Debtors. | : Jointly Administered |
| | : |
| | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE IT GROUP et al., On Behalf of The IT Group, Inc., et al., | : Adv. Pro. No. 04-51311 (MFW) |
| Plaintiff. | : |
| v. | : Ref. Adv. Pro. D.I. 156, 157 |
| ACRES OF DIAMONDS, | : |
| Defendant. | : |
| | : |

## <u>ORDER</u>

This matter having come before the Court upon the Motion of the Trustee of the IT Litigation Trust for Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d) (Adv. Pro. D.I. 156, 157) (the "Motion"), and upon consideration of the Motion and Defendant Acres of Diamonds, L.P.'s Response in opposition thereto, and upon finding the Motion to be without merit at this time, it is hereby

ORDERED, that the Motion is DENIED.

Dated: _____

_____
The Honorable Joseph J. Farnan, Jr.,
United States District Judge